# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TIMOTHY HAIGHT,

        Plaintiff,

v.                                  Case No:   6:13-cv-1400-Orl-28KRS

BLUESTEM BRANDS, INC.,

        Defendant.

## SUPPLEMENTAL BRIEFING ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. No. 49)** |
| **FILED:** | **October 17, 2014** |

On September 11, 2013, Plaintiff Timothy Haight filed a Class Action Complaint alleging that Defendant Bluestem Brands, Inc. d/b/a Fingerhut ("Fingerhut") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) by placing automated calls to his cellular telephone and continuing to make such calls after he informed Fingerhut that it was calling the wrong number or the wrong person. Doc. No. 1. On October 17, 2014, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, in which he requests that the Court enter an order: (1) provisionally certifying a class for settlement purposes only; (2) preliminarily approving the proposed class action settlement; (3) appointing Plaintiff as the named class representative; (4) appointing Plaintiff's counsel as class counsel; and (5) approving Plaintiff's

proposed method of providing notice to the settlement class.   Doc. No. 49.   Plaintiff filed the

following in support of his motion:

- Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Doc. No. 49-1;

- Settlement Agreement and Release, Doc. No. 49-2, with attached Exhibit A (Claim Form), Exhibits B1, B2, and B3 (Proposed Class Action Notice Forms), Exhibit C ([Proposed] Preliminary Approval Order), and Exhibit D (Proposed Final Approval Order)(collectively the "Settlement Agreement");

- A six-page Declaration of Scott D. Owens setting forth his qualifications and experience litigating class actions and particularly those concerning violations of the TCPA, Doc. No. 49-3;

- A six-page Declaration of Alexander H. Burke setting forth his qualifications and experience litigating class actions and particularly those concerning violations of the TCPA, Doc. No. 49-4;

- An eight-page Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan, Doc. No. 49-5, with attached information concerning proposed Settlement Administrator, Dahl Administration, LLC.

Plaintiff represents that Fingerhut does not oppose the motion.   The presiding District Judge

referred Plaintiff's motion to me for issuance of a report and recommendation.

Federal Rule of Civil Procedure 23 governs class actions in federal court.   Plaintiff

requests conditional certification of a class for settlement purposes only.[1]   The United States

Supreme Court has observed that "[w]hen a district court . . . certifies for class action settlement

only, the moment of certification requires 'heightened attention' . . . to the justifications for

binding the class members."   *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999) (quoting

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)("*Amchem*").   "Such attention is of

---

[1] In 2003, Rule 23 was amended by deleting the provision for conditional class certification. Therefore, a court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.   *See* Fed. R. Civ. P. 23, Advisory Comm. Notes, 2003 Amendments.

vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem*, 521 U.S. at 620.

The evidence and argument presented is insufficient for the Court to resolve the motion. Therefore, the Court will permit Plaintiff to file a supplemental memorandum of law supported by additional evidence that addresses each of the requirements for preliminary certification.   Plaintiff should, at a minimum, address the following:

**Evidence Supporting the Rule 23(a) Factors.**

"Rule 23 does not set forth a mere pleading standard.   A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."   *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).   Certification is proper only if the district court is satisfied, after rigorous analysis, that the requirements of Rule 23(a) are satisfied.   *Id.*   The proponent of class certification must also demonstrate that at least one of the alternative requirements of Rule 23(b) is satisfied.   *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).   Here, Haight seeks certification under Rule 23(a) and (b)(3).

Because actual, not presumed, conformance with Rule 23(a) is indispensable, movants must present evidence sufficient to establish each of the Rule 23(a) factors.   For example, Haight must establish that the class is so numerous that joinder of all members is impracticable.   Fed. R. Civ. P. 23(a)(1).   Although Haight has indicated in the memorandum in support of his motion that 3.7 million individuals received phone calls from Bluestem, Doc. No. 41 at 4, he has not presented any evidence in support of this number.   *See Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th

Cir. 2013) ("'Statements by counsel in briefs are not evidence . . . .'")(quoting *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).

Accordingly, the Court will permit Haight to provide evidence in support of the motion sufficient to establish each of the Rule 23 factors via a supplemental memorandum and supporting evidence.

**Ambiguities in the Settlement Agreement.**

Some of the defined terms in the Settlement Agreement are ambiguous.[2]   For example, in paragraph 2.33, the Settlement Agreement defines "Defendant" as "Bluestem Brands, Inc. as defined above."   Settlement Agreement ¶ 2.33.   While "Bluestem" and "Bluestem Brands" are defined in paragraph 2.06, there does not appear to be a definition of Bluestem Brands, Inc.   This ambiguity repeats in subsequent paragraphs of the Settlement Agreement.   *See, e.g.,* Settlement Agreement ¶¶ 2.09 (referring to "Defendant"); 2.20 (referring to "Defendant"); 2.44 (referring to release of all Released Claims in favor of Defendant rather than the Released Parties).

The inconsistent use of terms appears again in the proposed notices.   For example, the proposed Email Notice describes the persons in the Settlement Class as follows:

> If you received a non-emergency call on your cellular telephone regarding debt collection from Bluestem Brands, Inc. ("Bluestem") or on behalf of Bluestem regarding a Fingerhut, Gettington, or PayCheck Direct credit account through the use of an automatic telephone dialing system of a prerecorded voice, you could receive a payment from a class action settlement.

Doc. No. 49-2 at 29. "Bluestem" as defined in the Settlement Agreement includes entities other than Bluestem Brands, Inc.

---

[2] The examples provided herein are not necessarily all of the ambiguities in the Settlement Agreement and supporting documents.

Counsel for the parties should again carefully review the Settlement Agreement and supporting documents and address the above-referenced and other ambiguities, if any, in the supplemental memorandum.

**Incentive Payment**.

The Settlement Agreement contemplates that Haight may request $10,000 as an incentive payment for his services as the Class Representative.   Such payments have been approved to compensate class representatives for their costs, time and other extraordinary services they provided for the benefit of the absent class members.   *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1220 (S.D. Fla. 2006).   No evidence has been presented in this case of the time Haight has devoted to the litigation of the case, the unreimbursed out-of-pocket costs he has incurred or any other extraordinary services he has provided for the benefit of the absent class members.   While the amount of an incentive payment, if any, need not be determined until the final approval stage, because it appears that Haight could potentially receive multiple times more money than any other member of the Settlement Class, his contribution to the litigation is necessary to determine whether he has a conflict of interest with other class members.   *See Amchem*, 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

**Attorneys' Fees, Costs and Expenses**.

Haight states that his attorneys, if approved as Class Counsel, will seek a fee equal to 25% of the Settlement Fund.   He presents no estimate of the additional expenses and costs the attorneys are likely to seek.   As discussed in more detail below, without accurate information about the expenses and costs to be paid before any payment is made to approved Settlement Class Members, the Court cannot preliminarily determine the fairness of the proposed settlement.

**Fairness of the Proposed Settlement.**

Under the Settlement Agreement, Fingerhut agrees to pay a Settlement Fund of $4,400,492.00. Settlement Agreement ¶ 2.44. This Settlement Fund would be distributed as follows:

- First, Fingerhut will withhold from the Settlement Fund all amounts it has previously paid to the Claims Administrator (Settlement Agreement ¶ 7.03);

- Second, the Claims Administrator will pay to Class Counsel from the Settlement Fund the attorneys' fees, costs and expenses ordered by the Court (Settlement Agreement ¶ 7.04(a);

- Third, the Claims Administrator will pay to the Class Representative any incentive payment authorized by the Court (Settlement Agreement ¶ 7.04(b));

- Fourth, the Claims Administrator will reimburse itself for any unreimbursed costs of administration (Settlement Agreement ¶ 7.04(c));

- Fifth, the Claims Administrator will pay remaining Settlement Funds or Account Credits to eligible Class Members (Settlement Agreement ¶ 7.04(d), (e).

Using the estimates provided in the memorandum in support of the motion, the disbursement of the Settlement Fund would begin as follows:

| | |
|---|---|
| Settlement Fund: | $4,400,492.00 |
| Costs Paid by Fingerhut to Claims Administrator: | ($900,000.00)[3] |
| Class Counsel Attorneys' Fees | ($1,100,123.00) |
| Class Counsel's Expenses and Costs | (not estimated) |

---

[3] These estimated costs seem exceedingly high. It would be helpful for the basis for these estimated costs to be discussed in the supplemental memorandum.

Incentive Payment ($10,000.00)

Unreimbursed Costs to Claims Administrator: (unknown)

**Amount Available to Pay Approved Class Members:** **≤ $2,390,236.00**

Assuming that there are 3.7 million class members, the total amount that each of these class

members could receive in an Account Credit or Cash Award is approximately sixty-five cents.[4]

While I am aware that there is unlikely to be a 100% claim rate, counsel for Haight should address

the estimated numbers of persons in the proposed class and the fairness of the proposed settlement

in the supplemental memorandum in light of the issues raised herein.

### Notices.

Rule 23(c)(2)(B) specifies the content of the required notice, as follows:

> *For (b)(3) Classes.*   For any class certified under Rule 23(b)(3), the
> court must direct to class members the best notice that is practicable
> under the circumstances, including individual notice to all members
> who can be identified through reasonable effort.  The notice must
> clearly and concisely state in plain, easily understood language:

> (i)     the nature of the action;

> (ii)    the definition of the class certified;

> (iii)   the class claims, issues, or defenses;

> (iv)    that a class member may enter an appearance through an attorney if
> the member so desires;

> (v)     that the court will exclude from the class any member who
> requests exclusion;

> (vi)    the time and manner for requesting exclusion; and

---

[4] Calculated as follows:   $2,390,236.00 divided by 3,700,000.00.

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3). "The standard for the adequacy of a settlement notice in a class action is measured by reasonableness.   *See* Fed. R. Civ. P. 23(e).   We have interpreted Rule 23 to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'"   *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2012) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977)).

In the 2010 version of the "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" produced by the Federal Judicial Center ("FJC Guide"), one item on the checklist responds to the questions "Do the notices include the Rule 23 elements?   Even the summary notice?," as follows:

> Summary notices, whether mailed or published, encourage readership, and the FJC illustrative notices show that even summary notices can include *all elements* required by Rule 23(c)(2)(B).   But an overly short summary notice, one that *mostly points interested readers to a detailed notice*, can result in most class members (who read only the summary notice) being unaware of basic rights.

FJC Guide at 5 (emphasis added), found online at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (last visited Jan. 12, 2015).

The proposed notices raise concerns for the Court.   For example, the notices estimate that approved Settlement Class Members will receive between $20 and $40, Doc. No. 49-2 at 29, 32, 37, but there is no evidence in the record to support that assertion.   The explanation of released claims does not appear to include the entities holding the paper on the credit card debts at issue, and it uses defined terms the definitions of which are not in the notice.   *See, e.g.,* Doc. No. 49-2

at 38.   The long form notice also uses the terms that do not appear to be defined in the Settlement

Agreement or the notice, specifically "Bluestem Credit Accounts," and "Bluestem Brands, Inc.'s

Credit Account holders."   *Id*.   The notices also do not appear to advise Settlement Class

Members who have a Fingerhut, Gettington or PayCheck Direct Credit Account that by failing to

opt-out of the class they are agreeing that they have given prior express consent to Bluestem (as

defined in the Settlement Agreement) to make automated calls or artificial/prerecorded messages

to the cellular telephone number they have provided to Bluestem (as defined in the Settlement

Agreement) or any cellular telephone number they provide in the future.   *See* Settlement

Agreement ¶ 4.02.

In the supplemental memorandum, counsel for Haight shall identify by pin-point citations

to the record how the proposed notices provide all of the information required by Rule 23(b)(3).

They shall also address the above-referenced issues, including whether a notice is adequate if it

requires putative class members to read a long legal document, such as the Settlement Agreement,

to understand defined terms.

In sum, it is **ORDERED** that, on or before January 30, 2015, counsel for Plaintiff shall file

a supplemental memorandum and evidence in support of Plaintiff's Unopposed Motion for

Preliminary Approval of Class Action Settlement, Doc. No. 49.

**DONE** and **ORDERED** in Orlando, Florida on January 12, 2015.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE