# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TIMOTHY HAIGHT,**

        **Plaintiff,**

**v.**                                   **Case No:  6:13-cv-1400-Orl-28KRS**

**BLUESTEM BRANDS, INC.,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

        This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. No. 49)** |
| **FILED:** | **October 17, 2014** |

## I.      BACKGROUND.

        On September 11, 2013, Plaintiff Timothy Haight ("Haight") filed a class action lawsuit against Defendant Bluestem Brands, Inc. d/b/a Fingerhut ("Bluestem"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), specifically 47 U.S.C. § 227(b)(1)(A)(iii).  Doc. No. 1.  Haight alleged that Bluestem has systematically called his cellular telephone, without his consent, in an attempt to collect an alleged debt that he does not owe.  *Id.* ¶ 2.  Bluestem has called Haight's cellular telephone on more than twenty occasions.  *Id.* ¶ 8.  Haight states that he "and/or [his] wife" answered some of the calls and heard a three-to-five-second pause before a representative came on the line.  *Id.* ¶ 10.  Haight believes that the pause indicates that Bluestem used an

automatic telephone dialing system to make the calls. *Id.* ¶ 11. He states that, upon information and belief, Bluestem called "thousands of unique cell phone numbers during the class period." *Id.* ¶ 19. Haight subsequently filed a motion for class certification, Doc. No. 3, which was denied without prejudice, Doc. No. 4.

Bluestem filed its answer on November 1, 2013. Doc. No. 14. The answer raised a number of affirmative defenses, including the following: (1) the presence of a binding arbitration clause in "one or more of Bluestem's account agreements with Plaintiff and/or the purported class members"; (2) the presence of a binding class action waiver in "one or more of Bluestem's account agreements with Plaintiff and/or the purported class members"; and (3) the receipt of consent from "Plaintiff and/or the purported class members." Doc. No. 14, at 9–10.

The parties attended mediation on March 10, 2014. Doc. No. 37. In their joint status report, the parties informed the Court that they had reached an agreement in principle to settle the claims on a class-wide basis. *Id.* at 1. On May 1, 2014, the Court stayed the case for a period of sixty days and ordered that the parties file, no later than June 30, 2014, either a joint status report concerning completion of the settlement or a motion for preliminary approval of the settlement. Doc. No. 43. On June 30, 2014, the parties filed a joint status report, stating that they were not yet ready to move the Court for preliminary approval. Doc. No. 45, at 1. The Court thereafter stayed the case for an additional sixty days. Doc. No. 46. On August 29, 2014, the parties informed the Court that the settlement agreement had still not been finalized. Doc. No. 47. The Court then issued an order setting an October 17, 2014 deadline for the filing of a motion for preliminary approval of the settlement. Doc. No. 48.

On October 17, 2014, Haight filed an unopposed motion to certify the class and for preliminary approval of a class action settlement. Doc. No. 49. This Court issued a supplemental

briefing order on January 13, 2015, informing Haight that the evidence and arguments presented were insufficient for the Court to resolve the motion. Doc. No. 51, at 2. This Court informed Haight that he should address a number of issues, including the lack of evidence concerning the requirements of Federal Rule of Civil Procedure 23(a). *Id.* at 2–3. Haight filed his supplemental brief on February 9, 2015, Doc. No. 54, which was accompanied by an amended settlement agreement, Doc. No. 54-1 (the "Amended Settlement Agreement").

## II.    ANALYTICAL STANDARD.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2001) (quoting *Calfano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Before a court may certify a class, the plaintiff must first establish that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). The Court must then determine that the putative class meets each of the requirements set forth in Rule 23(a), as well as at least one of the requirements set forth in Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009).

Rule 23(a) provides that a class may only be certified if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims of the representatives are typical of the claims of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). Haight seeks certification under Rule 23(b)(3), which requires him to demonstrate (1) that questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. A plaintiff's failure to establish

compliance with the above requirements precludes class certification. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S. Ct. at 2551. Instead, "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega*, 564 F.3d at 1266; *accord Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). That analysis frequently entails overlap with the merits of the underlying claim because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)) (internal quotation marks omitted). A court, therefore, must understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful determination as to whether certification is appropriate. *In re Photochromic Lens Antitrust Litig.*, MDL No. 2173, 2014 U.S. Dist. LEXIS 46107, at *32 (M.D. Fla. Apr. 3, 2014).

When confronted with a request for settlement-only class certification, a court need not inquire whether the case, if tried, would present intractable management problems under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)("*Amchem*"). The other requirements of Rule 23, however, "demand undiluted, even heightened, attention in the settlement context." *Id.*; *see also Valley Drug Co.*, 350 F.3d at 1188 (holding that a court has the responsibility to conduct its own inquiry as to whether the requirements of Rule 23 are satisfied, even when their satisfaction is not contested). This attention is critical for the protection of absentees because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem*, 521 U.S. at 620.

## III.    DISCUSSION.

Having considered Haight's motion (Doc. No. 49), supplemental brief (Doc. No. 54), Amended Settlement Agreement (Doc. No. 54-1), and other filings, I recommend that the Court find that preliminary class certification and settlement approval are not warranted.   First, the proposed settlement class is not clearly ascertainable or adequately defined.   Second, Haight has not presented sufficient evidence to satisfy the requirements of Rule 23(a).   Third, Haight has failed to establish that certification is warranted under Rule 23(b)(3).   Finally, the record does not support a conclusion that the settlement is fair and reasonable under Rule 23(e).

### A.    *The Proposed Settlement Class Is Not Clearly Ascertainable and Adequately Defined.*

"[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."   *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).[1]   This standard requires that the class's "members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014).[2]   The objective criteria must be administratively feasible, meaning that the identification of class members is a manageable process that requires little, if any, individual inquiry.   *Id.*; *Bilotta v. Citizens Info. Assocs., LLC*, No. 8:13-cv-2811-T-30TGW, 2014 U.S. Dist. LEXIS 68495, at *6 (M.D. Fla. May 19, 2014).   "Ascertainability is needed for properly enforcing the preclusive effect of final judgment.   The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets

---

[1]   The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[2]   Unpublished decisions of the Eleventh Circuit are cited herein as persuasive authority.

the burden of any loss." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

"A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). Instead, a plaintiff must establish ascertainability by a preponderance of the evidence. *Id.* at 306 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)); *accord Abby v. Paige*, 282 F.R.D. 576, 578 (S.D. Fla. 2012) (finding a class definition inadequate when the record contained no evidence to ascertain the identities of class members).

Haight defines the proposed settlement class as follows:

> [A]ll persons within the United States who received a non-emergency telephone call from Bluestem or on behalf of Bluestem to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice in connection with an attempt to collect on a credit account debt from September 11, 2009, through November 15, 2014.

Doc. No. 54-1, at 8 ¶ 2.42. In his motion, Haight states that "Bluestem has agreed to furnish . . . an electronically searchable database [the "Database"] containing the names, last known email address, last known mailing address, truncated account numbers, and cellular telephone numbers called for all known members of the Settlement Class." Doc. No. 49-1, at 5. The Amended Settlement Agreement, though, clarifies that Bluestem will only provide that information "as such information is contained in the reasonably available computerized account records [Bluestem] maintains." Doc. No. 54-1, at 13 ¶ 7.02.

I discern a number of issues with ascertaining the class on the basis of such computerized records, particularly in light of the paucity of Haight's evidentiary submission. First, it is not evident how Bluestem identified the "known members of the Settlement Class" in order to create the Database. Counsel for Haight submits that "Defendant estimates that the Settlement Class is

comprised of the owners of approximately [4.6] million unique cellular telephone numbers." Doc. No. 49-1, at 5.[3]   However, the class, as defined, is composed of persons who "received" the calls, not the owners of the cellular telephones to which the calls were made.

Second, there is no evidence how Bluestem determined that the calls to these 4.6 million cellular telephone numbers arguably were made in violation of the TCPA.   Calls arguably made in violation of the TCPA are those made to a cellular telephone in a non-emergency situation through the use of an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent.   *See, e.g., Legg v. Quicken Loans, Inc.*, No. 14-61116-Civ, 2015 WL 897476, at * 2 (S.D. Fla. Feb. 25, 2015).

Third, Haight has not presented evidence regarding the time frame covered by Bluestem's "reasonably available" computerized records.   Without such information, this Court is unable to conclude that such records permit for the ascertainment of the class members from September 11, 2009, through November 15, 2014—the relevant class period.   *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (noting that records present ascertainability issues when they are underinclusive).

Fourth, the proposed settlement class covers persons who received calls "from Bluestem *or on behalf of Bluestem*."   Doc. No. 54-1, at 8.   Haight has offered no evidence that the Database will include information about calls made by "the vendors that placed the calls at issue, i.e., First Contact, LLC, AllianceOne Receivables Management, Inc., Star Contact S. De R.L., and SoundBite Communications, Inc."   Doc. No. 54, at 3; *cf. See Mirabella v. Vital Pharms., Inc.*, No. 12-62086-CIV-ZLOCH, 2015 U.S. Dist. LEXIS 43590, at *10–11 (S.D. Fla. Feb. 27, 2015)

---

[3] In an answer to an interrogatory, Bluestem averred that "[b]etween September 11, 2009, and November 15, 2014, 4,658,393 unique cellular telephone numbers were called by Bluestem or on Bluestem's behalf to collect on a credit account debt."   Doc. No. 54-5, at 7.

(noting that, when a retailer did 60–70% of its sales through distributors, the retailer did not necessarily have sales records from the distributors and that it was, therefore, unlikely the class could be ascertained through reference to objective criteria).

For these reasons, the Court has insufficient information to conclude the Database is likely to identify the putative members of the class. *See Marcus*, 687 F.3d at 593–94 (finding an assertion that records "may" reveal class members insufficient to establish ascertainability).

The definition of the class as being composed of persons who "received" the calls also presents serious ascertainability concerns. The Amended Settlement Agreement does not define "received." At what point does an individual receive a call? Has a husband received a call if his cellular telephone number was dialed, but his wife answered on his behalf? Has a parent received a call if he is the subscriber for a family plan but the call is made to the cellular telephone number of a child who is the regular user and carrier of that cellular telephone under the family plan? *See, e.g., Fini v. Dish Network, L.L.C.*, 955 F. Supp. 2d 1288 (M.D. Fla. 2013). With these definitional ambiguities present, even persons who receive notice of the class action settlement will be uncertain as to whether they are members of the class who need to make a determination whether to opt-out of the class, object to the settlement, or do nothing and be bound by the release in the Amended Settlement Agreement.[4] Courts should not have to engage in subsequent satellite litigation to

---

[4] The use of the word "received" potentially raises a second definitional issue. District courts appear to be sharply divided on the question of who has standing to bring claims under the TCPA. A number of courts have determined that standing under the TCPA is limited to a "called party," which they define as the intended recipient of the call. *E.g., Cellco P'ship v. Wilcrest Health Care Mgmt., Inc.*, No. 09-3534 (MLC), 2012 U.S. Dist. LEXIS 64407, at *17–20 (D.N.J. May 8, 2012). Other courts have found that that a party has standing under the TCPA if the plaintiff is the regular user and carrier of the phone and received the calls at issue. *E.g., Soulliere v. Cent. Fla. Invs., Inc.*, No. 8:13-cv-2860-T-27AEP, 2015 U.S. Dist. LEXIS 36858, at *12–14 (M.D. Fla. Mar. 23, 2015); *see also D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011). A third group of courts, however, have interpreted the TCPA more broadly, permitting any "person or entity" injured by a violation of the statute to seek redress. *See, e.g., Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013); *Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1217–18 (N.D. Ala. 2012); *Tang v. Med.*

- 8 -

determine who was a member of the class. *See Marcus*, 687 F.3d at 593; *Xavier*, 787 F. Supp. 2d at 1089.

Finally, Haight also offered no evidence that the identities of the persons "who received" calls in violation of the TCPA can be identified from the Database. Absent evidentiary assurances that an administratively feasible method exists to identify the individuals who "received" the calls at issue, this Court should not certify the class. *Cf. Stalley v. ADS Alliance Data Sys.*, 296 F.R.D. 670, 679–80 (M.D. Fla. 2013) (holding that a class was not ascertainable under a Florida law when the plaintiff failed to offer evidence concerning how "the person who actually answered a call . . . can be identified").

For all of these reasons, I recommend that the Court find that the evidence currently before the Court is insufficient to permit preliminary approval of the settlement class.

> **B.**     *Haight Has Also Failed to Present Sufficient Evidence to Satisfy the Requirements of Rule 23(a).*

Haight has also failed to satisfy his burden of establishing Rule 23(a)'s threshold requirements for class certification: numerosity, commonality, typicality, and adequacy of representation. Each of those requirements will be discussed in turn.

---

*Recovery Specialists, LLC*, No. 11 C 2109, 2011 U.S. Dist. LEXIS 158496, at *6–7 (N.D. Ill. July 7, 2011).

> Under the two more limited views of TCPA standing — that a party should be (1) an intended recipient or (2) the regular user and carrier of the phone — the proposed class would be defined in an overbroad manner. Incidental recipients of calls, such as spouses or children who answer the regular user's phone, would be members of the class as defined, but would not have standing under either of these two theories. Were the Court to accept either of these interpretations, Haight's definition would "impermissibly include[] members who have no cause of action as a matter of law" and be subject to rejection as inadequately defined. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012). Because of the other ascertainability issues presented by the class definition, however, the Court need not resolve this issue at present.

1. <u>Haight Has Not Presented Sufficient Evidence to Satisfy the Numerosity Requirement of Rule 23(a)(1).</u>

Under Rule 23(a)(1), Haight must establish that the members of the proposed class are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has observed that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice ¶ 23.05[1] n.7 (1978)) (internal quotation marks omitted). The numerosity requirement, therefore, presents a "generally low hurdle." *Vega*, 564 F.3d at 1267. Even so, a plaintiff "must show some evidence of or reasonably estimate the number of class members." *Barlow v. Marion Cnty. Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D. Fla. 1980). "Mere speculation, bare allegations, and unsupported conclusions are inadequate." *Id.*

In *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266–68 (11th Cir. 2009), the Eleventh Circuit addressed whether a district court abused its discretion in finding that a Florida-only class of retail sales associates was sufficiently numerous for certification. In his request for class certification, the plaintiff cited deposition testimony indicating that the number of retail sales associates employed by the defendant during a five-year period was "in the thousands." *Id.* The Eleventh Circuit observed that, while such evidence would have supported a finding of numerosity for a nationwide class, it provided no evidence of the size of the Florida class at issue. *Id.* The size of the defendant made it "tempting" to assume that the number of retail associates employed in Florida would overcome Rule 23(a)(1)'s low hurdle. *Id.* at 1267. Because the record evidence was tailored to the Florida class specifically, however, the Eleventh Circuit held that the district court's inference of numerosity was "an exercise in sheer speculation" and an abuse of discretion. *Id.* at 1267–68.

Haight's evidentiary showing suffers from deficiencies similar to those highlighted in *Vega*. Haight contends that the settlement class consists of 3.9 million individuals, but his counsel did not provide any evidence of how he arrived at that number. Doc. No. 54-5 ¶ 5. Haight argues that an interrogatory response from Bluestem confirms that figure. Doc. No. 54, at 3-4. However, Bluestem's interrogatory response only identifies the number of telephone numbers called, not the number of persons who received the calls. *See* Doc. No. 54-5, at 5–15.

Given the lack of evidence, a conclusion that the class is so numerous that joinder is impracticable would be purely speculative. Haight, therefore, has failed to meet his burden, and class certification is unwarranted.

2. Haight Also Has Not Presented Sufficient Evidence to Satisfy the Commonality Requirement of Rule 23(a)(2).

To establish commonality, a plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). This requirement is not satisfied merely because the class members "have all suffered a violation of the same provision of law." *Id.* Their claims must depend on "a common contention" that is "capable of classwide resolution." *Id.* "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (internal quotation marks omitted).

Haight asserts that "the Settlement Class Members here have all suffered the same injury and are generally subject to the same defenses." Doc. No. 49-1, at 12. He claims that the "alleged violations were the result of the same business practices with respect to each member of the proposed

Settlement Class—they all involve autodialed calls using the same technology to try to collect on an alleged debt." *Id.* He has failed, however, to offer any evidence in support of his assertions. As the Third Circuit has noted, "[i]t is not enough that the parties agreed to settle and believed that 'a more fully developed record would show that there were questions of law and fact common to all Class Members.' One cannot say, in effect, 'we could show commonality, if we had to.' The short answer is, 'you do have to.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013); *accord Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 679–80 (11th Cir. 1983) ("A court cannot simply presume that the commonality requirement has been satisfied; the plaintiff bears the burden of proof on this issue.").

"It is not enough, and is in fact error, for a district court to presume one instance of misconduct was common to all members of the class . . . ." *Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.*, No. 8:12-cv-2631-T-17AEP, 2014 U.S. Dist. LEXIS 24400, at *9 (M.D. Fla. Feb. 26, 2014). Indeed, as one court in this circuit has noted, "Plaintiff's burden of proof to demonstrate the existence of this common question entails more than the simple assertion of its existence, but less than a prima facie showing of liability." *Gilchrist v. Bolger*, 89 F.R.D. 402, 405-06 (S.D. Ga. 1981). Haight, however, relies solely on his own assertion that common questions exist and provides no evidentiary basis for that assertion. *See* Doc. No. 49-1, at 11–12.

In short, Haight has not presented evidence sufficient to show that the proposed class is anything but a class of one. This Court therefore has no factual basis upon which it could conclude that there exist questions common to a larger class.

3.  <u>Haight Also Has Failed to Present Sufficient Evidence to Satisfy the Typicality Requirement of Rule 23(a)(3).</u>

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811

(11th Cir. 2001). "The typicality requirement may be satisfied despite substantial factual differences, however, when there is a 'strong similarity of legal theories.'" *Id.* (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)). The inquiry "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998). Typicality "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983).

Haight argues that his claims "arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury" as the claims of the proposed settlement class. Doc. No. 49-1, at 13. He asserts that "[l]ike the members of the Settlement Class, Plaintiff received the same type [of] debt collection calls to his cell phone." *Id.* Despite these assertions, he cited to no supporting evidence in his brief, *see id.* at 12–13, and the Court discerns no such evidence from the record.

Haight's claim that he received calls through the use of an automatic telephone dialing system or an artificial or prerecorded voice, without more, is insufficient to sustain his across-the-board attack. *See Falcon*, 457 U.S. at 158. He has offered no evidence indicating that any other individual was called by Bluestem in the same manner. *See Davidson v. U.S. Steel Corp.*, 104 F.R.D. 1, 3 (W.D. Pa. 1984) (finding that a plaintiff did not satisfy the typicality requirement when he "failed to offer th[e] court any evidence to show that he is not a class of one"). Counsel's speculation that Bluestem engaged in a business practice that resulted in calls being placed by automatic telephone dialing systems or artificial or prerecorded voice messages to recipients who

had not provided prior express consent to receive such call is not evidence.[5]  *See Quinn v. Nationwide Ins. Co.*, 281 F. App'x 771, 776 (10th Cir. 2008) (affirming a denial of class certification when the plaintiffs "offered nothing more than speculation that other contracts exist containing the same operative language"); *Belles*, 720 F.2d at 515 ("Proof of typicality requires more than general conclusory allegations."); *Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP-MJD, 2014 U.S. Dist. LEXIS 43147, at *32–33 (S.D. Ind. Mar. 31, 2014) (determining that the plaintiffs' conclusory statement that "Plaintiffs' claims are typical of those of the class members" and are "based on the same facts and legal theories" did not meet their burden for establishing typicality).

In light of all the foregoing, I recommend that the Court find that the evidence is insufficient to establish typicality, and that preliminary class certification should be denied.

4. <u>Haight Has Also Failed to Present Sufficient Evidence to Establish Adequate Representation Under Rule 23(a)(4).</u>

The requirements of commonality and typicality "tend to merge with the adequacy-of-representation requirement."  *Dukes*, 131 S. Ct. at 1551 n.5.  "[T]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  A plaintiff must prove adequacy of representation through facts, not mere conclusions.  *See Shelley v. AmSouth Bank*, No. 97-1170-RV-C, 2000 U.S. Dist. LEXIS 11429, at *17 (S.D. Ala. July 24, 2000).

---

[5] In the Amended Settlement Agreement, the parties agreed "that the core relief under the Settlement is Bluestem's business practice changes.  As a benefit to all Settlement Class Members, Bluestem has developed and implemented significant enhancements to its calling practices designed to prevent the calling of a cellphone with an automatic telephone dialing system or an artificial or prerecorded voice message unless the recipient of the call has provided prior express consent."  Doc. No. 54-1, at 10-11 ¶ 4.01.  Bluestem's change in its business practices, which is not enforceable under the Amended Settlement Agreement, is not an admission by Bluestem that it violated the TCPA as to any putative settlement class member.  Rather, earlier in the Amended Settlement Agreement, Bluestem specifically disputed that it violated the TCPA.  *Id.* at 2 ¶ 1.02.

Questions regarding Haight's adequacy as a class representative arise from a comparison of his complaint to the Amended Settlement Agreement. *See generally Amchem*, 521 U.S. at 619 ("[S]ettlement is relevant to class certification."). Haight's complaint includes only one count, which raises a claim for violation of the TCPA. Doc. No. 1. The Amended Settlement Agreement, however, releases many claims other than those arising under the TCPA.

In relevant part, the Amended Settlement Agreement provides as follows:

> Plaintiff and each Settlement Class Member, as well as their respective assigns, heirs, executors, administrators, successors and agents, hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims . . . . "Released Claims" means any and all "TCPA claims" and any and all "state law claims" based upon use of an automatic telephone dialing system or an artificial or prerecorded voice to make calls to cellular telephones to attempt to contact Settlement Class Members in connection with a Fingerhut Credit Account, Gettington Credit Account, or PayCheck Debit Credit Account from September 11, 2009, to November 15, 2014, wherein "TCPA claims" and "state law claims," as used in this sentence mean claims, causes of action suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state, law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order.

Doc. No. 54-1 ¶ 14.01. This broad provision releases all claims, including claims not asserted to violate the TCPA, arising from the use of an automatic telephone dialing system or an artificial or prerecorded voice to a cellular telephone during the relevant time period. Haight's counsel has not explained why Haight is an adequate representative of putative class members who have claims that do not arise under the TCPA that will be released if the Amended Settlement Agreement is ultimately approved. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 106–07 (2d Cir. 2005) (requiring that all released claims be adequately represented prior to settlement); *see also Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962) (holding that plaintiffs "cannot represent a class of

whom they are not apart"); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 n.7 (S.D.N.Y. 2004) (noting that, without evidence that a plaintiff possessed a claim included in a release, "the court could not have approved the settlement because [the plaintiff] would not have been an adequate representative for the release of a claim that she did not possess").

In the Amended Settlement Agreement, Haight, on behalf of the putative class members, also agrees to release the following parties: Bluestem Brands, Inc.; Bluestem Sales, Inc. d/b/a Fingerhut and Gettington; Bluestem Enterprises, Inc. d/b/a PayCheck Direct; WebBank; MetaBank; CIT Bank; First Contact, LLC; AllianceOne Receivables Management, Inc.; Star Contact S. De R.L.; SoundBite Communications, Inc.; each of these entities' "past, present, and future parents, subsidiaries, affiliated companies and corporations, and each of its respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each of their respective executors, successors, assigns, and legal representatives"; and, "all corporate affiliates of [Bluestem] that are related to [Bluestem]'s credit business and all entities with which Bluestem contracts to place calls using [Bluestem]'s dialers or other dialers and each calling vendor's subsidiaries, affiliated companies and corporations." Doc. No. 54 ¶¶ 2.38, 2.39. While Haight's complaint suggests that he could conceivably bring claims against Bluestem Brands, Inc. and Bluestem Sales, Inc., *see* Doc. No. 1, Haight has offered no argument or evidence that he was harmed by or could bring claims against *all* of the above-listed parties. Moreover, there is no evidence of the identities of each of the unnamed parties that will be released. Neither Haight, Bluestem nor any member of the putative class can identify individuals and entities that will, *in the future*, be among the individuals and entities released.

Because of the breadth of the release in the Amended Settlement Agreement, among other factors, I recommend that the Court find that Haight has not established that he would be an adequate class representative.  *See Consol. Edison, Inc.*, 332 F. Supp. 2d 639, 652 n.7.

C.     *Haight Has Failed to Present Sufficient Evidence to Satisfy Rule 23(b)(3)'s Predominance and Superiority Criteria.*

Like the requirements of Rule 23(a), Rule 23(b)(3)'s predominance criterion must be satisfied "through evidentiary proof."  *Behrend*, 133 S. Ct. at 1432.  The requirement is "far more demanding" than Rule 23(a)'s commonality requirement and cannot be satisfied merely by "a common interest in a fair compromise."  *Amchem*, 521 U.S. at 623–24.   A district court "[c]onfronted with a request for settlement-only class certification . . .  need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Id.* at 620.   Nevertheless, the court "must still determine whether 'the legal or factual questions that qualify each class member's case as a genuine controversy' are sufficiently similar as to yield a cohesive class."  *In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 40 (2d Cir. 2012) (quoting *Amchem*, 521 U.S. at 623).

Haight asserts that other courts "recognize the benefits of class certification" in TCPA cases. Doc. No. 49-1, at 16.   There are, however, no invariable rules regarding the suitability of TCPA claims for class treatment—"the unique facts of each case generally will determine whether certification is proper."  *Gene & Gene, LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008). Haight has offered no evidence concerning any individual other than himself, and this Court therefore has no basis for determining that the legal and factual questions qualifying each class member's case are sufficiently similar to yield a cohesive class under Rule 23(b)(3).   This Court also has no factual basis upon which it may conclude that a class action is superior to other methods

of adjudicating the controversy. Accordingly, Haight's failure to satisfy Rule 23(b)(3) offers an additional ground for denying his motion.

      D.      *Haight Has Not Shown That The Amended Settlement Agreement Is "Fair, Reasonable, and Adequate" Under Rule 23(e).*

Under Rule 23(e), a class settlement should be "fair, adequate and reasonable and . . . not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). In deciding whether to grant preliminary approval of a class settlement, "[t]he Court must 'evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing.'" *Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, No. 8:14-cv-1646-T-33MAP, 2015 U.S. Dist. LEXIS 37744, at *11 (M.D. Fla. Mar. 25, 2015). "A proposed settlement should be preliminarily approved if it 'is within the range of possible approval or, in other words [if] there is probable cause to notify the class of the proposed settlement.'" *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV-MARTINEZ-BANDSTRA, 2007 U.S. Dist. LEXIS 37863, at *11–12 (S.D. Fla. 2007) (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)).

In *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), the Eleventh Circuit indicated that a district court should consider the following factors in its fairness determination: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. "A 'mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law' will not suffice." *Cotton*, 559 F.2d at 1330 (quoting *Protective Comm. v. Anderson*, 390 U.S. 414, 434 (1968)).

Because Haight has failed to present adequate evidence that the class should be certified under Rule 23(a) and (b), there is insufficient evidence for the Court to even reach the question of whether the proposed settlement is fair, reasonable and adequate. *See Amchem*, 521 U.S. at 621 ("[T]he 'class action' to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)."); *In re Marine Hose Antitrust Litig.*, No. 08-MDL-1888-GRAHAM/TURNOFF, 2009 U.S. Dist. LEXIS 71020, at *12 (S.D. Ala. July 31, 2009) ("A class ruling pursuant to Rule 23(a) and (b) necessarily impacts any proposed settlements under Rule 23(e)).

Haight also failed to present evidence that would permit a full and reasoned analysis of the six *Bennett* factors listed above. The lack of detail concerning the particular practices that resulted in calls allegedly in violation of the TCPA and the absence of an enforcement mechanism to ensure that modification of such practices will continue to be implemented require that this Court give closer attention to the monetary provisions of the settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003) (expressing "unease" with the incorporation in a settlement agreement of programs that had already been developed and implemented, with no obligation that those programs be continued).

On that front, Haight's evidentiary submission is also deficient. Previously, I discussed how the interrogatory response stating that "[b]etween September 11, 2009, and September 26, 2014, 4,468,948 unique cellular telephone numbers were called by Bluestem or on Bluestem's behalf to collect on a credit card account debt," Doc. No. 54-5, at 7, is inadequate for this Court to identify or approximate the size of the class as defined. Importantly for the fairness analysis, the figure also provides this Court with no indication as to how many total *calls* were made.[6] Such

---

[6] Haight, who presumably represents one of the unique numbers, alleges in his complaint that his number was called approximately twenty-four times although he admits that his wife answered some of those calls. Doc. No. 1 ¶¶ 8, 10.

information is significant because the TCPA provides for minimum statutory damages of $500.00 "for each call in violation of the TCPA." *Hines v. CMRE Fin. Servs., Inc.*, No. 13-61616-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 3017, at *13 (S.D. Fla. Jan. 10, 2014); *see also* 42 U.S.C. § 227(b)(3). Without some means of identifying the number of calls implicated in this class action or otherwise estimating the potential class-wide damages, the Court cannot reasonably evaluate the range of possible monetary recovery or the point on that range at which the settlement is fair. *See Zaldivar v. T-Mobile USA, Inc.*, No. C07-1659 RAJ, 2009 U.S. Dist. LEXIS 64091, at *7 (W.D. Wash. July 10, 2009) (noting that the parties' failure to disclose an estimate of damages to the class "prevent[ed] the court from assessing the fairness of the settlement").

In the Amended Settlement Agreement, Haight has bargained away all but one claim for each settlement class member irrespective of the number of calls arguably made in violation of the TCPA that the settlement class members received. Doc. No. 54-1, at 11 ¶ 4.04. Haight argues that this is fair because he is giving up his claims for damages for all "30 calls" from Bluestem. Doc. No. 54, at 9. This argument, however, overlooks the provision in the Amended Settlement Agreement permitting Haight to receive $10,000.00 as a service fee. Doc. No. 54-1 ¶¶ 5.01, 5.02. Haight attests that he has spent "approximately 15 hours" on the case, for which the proposed service fee would compensate him at a rate of $666.67 per hour. Doc. No. 54-6 ¶ 3. While service fees are permitted, in the context of determining whether a settlement is fair, reasonable and adequate, the Court should not overlook Haight's significant monetary incentive to agree to limit the number of claims that can be submitted by putative settlement class members.

Other provisions of the Amended Settlement Agreement also raise concerns for this Court. First, the conditions of opt-out appear unreasonable. To opt-out of the proposed settlement class, "[i]n the written request for exclusion, the Settlement Class member must state his or her full name,

address, cellular telephone number on which he or she received a call, and a telephone number at which he or she currently can be reached." Doc. No. 54-1, at 19 ¶ 10.02(a). "The Claims Administrator will [then] provide the Parties with copies of all opt-out requests it receives . . . ." *Id.* ¶ 10.02. It is not clear why Bluestem needs the cellular telephone number of an individual who does not wish to participate in the class settlement. Indeed, it might be argued that by providing the cellular telephone number to the claims administrator, who in turn agrees to provide the number to Bluestem, the individual opting out of the settlement class has provided "prior express consent" to Bluestem to call that number. *Cf. Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1125 (11th Cir. 2014) (finding that by granting a hospital permission to pass on an individual's health information to another company for billing, which information included a cellular telephone number, prior express consent had been given under the TCPA).

Second, the parties attempt to dictate Court action through their Amended Settlement Agreement. For example, the agreement states that, if the agreement is terminated, "orders entered by the Court in connection with this Agreement will be vacated." Doc. No. 54-1, at 24 ¶ 15.02. While the Court may determine that orders it enters should be vacated, the parties have no authority to require such action. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994); *see also Spinelli v. Capital One Bank, USA*, No. 8:08-cv-132-T-33EAJ, 2013 U.S. Dist. LEXIS 156079, at *7–8 n.2 (M.D. Fla. Oct. 25, 2013).

The Amended Settlement Agreement also provides that "[t]he Court will retain continuing *and exclusive jurisdiction* over the Parties to this Agreement, including the Plaintiff and all Settlement Class Members, for purposes of the administration and enforcement of this Agreement." Doc. No. 54-1, at 25 ¶ 17.04 (emphasis added). This provision is essentially an injunction precluding individuals who the parties contend are members of the settlement class who did not

properly opt-out from initiating or continuing litigation in other courts. Haight has not provided evidence of what pending cases, if any, would be enjoined if the Court finally approved this part of the Amended Settlement Agreement.

Because the evidence is insufficient to establish the Rule 23(a) and (b) factors, I have not discussed all of the issues that must be addressed before a settlement class could be preliminarily approved. These issues include whether the proposed form of notice is proper, whether the claims administrator is appropriate, and whether counsel for Haight would be adequate class counsel.[7]

In sum, because the evidence before the Court is insufficient to determine whether the Amended Settlement Agreement is fair, adequate and reasonable, the motion for preliminary approval of a settlement class should also be denied on that basis.

## IV.    RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that the Court **DENY** Haight's Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. No. 49).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 14, 2015.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[7] Rule 23(g) discusses the factors the Court must consider in appointing class counsel. The evidentiary and legal deficiencies identified in this Report and Recommendation, which remain even after the Court gave counsel for Haight an opportunity to present necessary evidence and supplemental briefing, raise significant concerns about whether counsel for Haight could fairly and adequately represent the interests of the class.

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy